[No. B205793. Second Dist., Div. Six. Sept. 29, 2009.]

DONALD D. COOK, JR., as Trustee, etc., Plaintiff and Respondent, v. DANIEL W. COOK, Defendant and Appellant.

COUNSEL

The Law Office of John Derrick and John Derrick for Defendant and Appellant.

Law Offices of Mary P. Kulvinskas, Mary P. Kulvinskas; Law Offices of Robert H. Pourvali and Robert H. Pourvali for Plaintiff and Respondent.

OPINION

**GILBERT, P. J.**—In an amendment to their testamentary trust, testators stated that a beneficiary's debt owed them should be offset against that beneficiary's distribution. Here we conclude the beneficiary's assertion that the debt is unenforceable violates the trust's no-contest provision.

Trust beneficiary Daniel W. Cook appeals an order determining that his pleading regarding the distribution of his deceased parents' trust violates the no-contest provision of the trust. We affirm.

### FACTS AND PROCEDURAL HISTORY

On October 23, 1997, Donald and Nancy Cook settled a revocable trust (Trust) and executed pour-over wills drafted by their attorney as an integrated estate plan. The beneficiaries of the Trust are their four children, Donald D. Cook, Jr., Daniel, Dennis, and Diane.[1]

---

[1] To ease the reader's task, we shall refer to the beneficiaries by their given names.

The Trust provides for equal distribution of Trust property among the four children, but requires the trustee to "take into account and allocate any debts owed to the settlors to the share created for the beneficiary owing said obligation." (Trust, ¶ 6.3(a).)

The Trust also contains this no-contest provision: "If any beneficiary under this instrument . . . directly or indirectly contests this instrument, any amendment to this instrument, . . . or opposes, objects to, or seeks to invalidate any of the provisions of this instrument . . . or seeks to succeed to any part of the estate of the settlors other than in the manner specified in this instrument . . . , then the right of that person to take any interest given to him or her by this instrument or any amendment to this instrument shall be void, and any gift or other interest in the trust property to which the beneficiary would otherwise have been entitled shall pass as if he or she had predeceased the settlors without issue." (Trust, ¶ 8.4.)

On October 23, 1997, the settlors also executed a two-page document (Writing) prepared by Donald, Jr., at their request.[2] The Writing states: "It is the desire of Donald and Nancy Cook that all children are treated equal with regard to the distribution of assets upon our demise. We would like for there to be no misunderstanding regarding certain debts owed by children who are beneficiaries. We would like for any and all debts to be offset against any and all assets, which is bequeathed, prior to distribution of the assets to the beneficiaries." The settlors' attorney interlineated upon the Writing, stating that it intended to "[r]eflect the loans (debts) owed to the settlors . . . as of the date of execution of said Trust." The attorney later testified that he drafted the interlineations as "a personal preference." He stated that he struck "verbiage" in the Writing that stated that the document was intended to "be an integral part of the [Trust]."

The Writing refers to an attachment setting forth the sums lent to Daniel since 1986, the amounts repaid, and the principal and interest owed. The Writing describes the loans as money lent "to help [Daniel] during a difficult time with his business." At the time the settlors executed the Writing, Daniel owed them nearly $900,000, and was repaying the loans with $1,500 monthly payments. The Writing also sets forth the sums lent to Dennis since 1991, the amounts repaid (none), and the principal and interest owed.

---

[2] We attach relevant portions of the Writing to this opinion as an appendix.

Donald and Nancy died in 2006. On April 19, 2007, successor trustee Donald, Jr., filed a petition requesting instructions whether the unpaid loans described in the attachment to the Writing, as well as a later loan to Daniel, should be offset or deducted from the Trust distributions. (Prob. Code, § 17200, subd. (b)(6).)[3] The trustee asserted that the matter was in dispute among the beneficiaries. Daniel responded to the petition, in propria persona, and asserted that the "loans which were long ago barred by the statute of limitations may not now be deducted from the distributive share interest of a beneficiary, especially when the loan agreements in question were oral and were not memorialized or documented by any type of legally adequate writing, and the indebtedness in question was satisfied." Among other things, Daniel contended that the two- and four-year statutes of limitations precluded offset against his Trust interest, the loans were not memorialized in writing, and the trustee failed to pursue collection of the loans in his bankruptcy proceeding. Daniel concluded: "[The] Court should instruct the Trustee in this matter that any loan or indebtedness which is outlawed and/or barred by the statute of limitations, verbal or written, may *not* be deducted from any Trust beneficiary's interest in the Trust, according to well established principles of California law."

Trust beneficiaries Dennis and Diane responded that Daniel's assertions and his request for ruling violated the Trust's no-contest provision. After a hearing and presentation of evidence, the probate judge stated: "I'm looking at the four corners of this pleading, and I don't see anywhere in this pleading a request for the interpretation of an instrument containing a no-contest clause. What I see argued in this pleading is that the trustee should be given instruction to distribute the assets of this trust in a way which is in conflict with the plain language of the trust instrument." The court noted that Daniel's pleading was not framed pursuant to the safe harbor provisions of section 21320, and that he did not provide evidence that he had repaid any debt. The court then ruled that Daniel's pleading violated the no-contest provision of the Trust, thereby causing his disinheritance pursuant to Trust terms.

Daniel appeals and contends that (1) his pleading merely requested an interpretation of the Trust pursuant to section 21305, subdivision (b), and was not a contest, and (2) time-barred loans may not be offset against his Trust distribution pursuant to well-settled California law.

---

[3] All further statutory references are to the Probate Code.

## DISCUSSION

### I.

Daniel contends that pursuant to section 21305, subdivision (b)(9), his responsive pleading to the trustee's petition does not violate the Trust's no-contest clause. He asserts that he merely advocated a Trust interpretation to disregard debts barred by the statute of limitations, among other reasons. Daniel also contends that his pleading is sheltered by section 21305, subdivision (b)(6) and (8), regarding challenges to the exercise of fiduciary power and to accountings of a fiduciary.

Daniel adds that his pleading is not a "clear and unequivocal attack" upon the Trust. (*Estate of Miller* (1963) 212 Cal.App.2d 284, 298 [27 Cal.Rptr. 909] ["The policy against forfeitures is so strong that our courts, following the universal rule in this country, insist upon a clear and unequivocal attack upon the will before invoking the penalty contained in the *in terrorem* clause . . . ."].) He points out that we must strictly construe a no-contest clause. (§ 21304 ["In determining the intent of the transferor, a no contest clause shall be strictly construed."]; *Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92].) Daniel argues that a debt barred by the statute of limitations is no longer a "debt owed" within the language of the Trust.

Daniel also argues that section 21307 precludes application of the no-contest clause to him because he is contesting a provision that ultimately benefits Donald, Jr., the "person who drafted . . . the instrument [Writing]." (*Id.*, subd. (a).) He also claims that the Writing is irrelevant to the resolution of his contentions because he asserts it is not part of or an amendment to the Trust.

We reject these contentions.

■    Generally, the interpretation of a trust or other testamentary instrument is a question of law which we independently determine. (*Burch v. George, supra*, 7 Cal.4th 246, 254.) The paramount rule in the interpretation of a testamentary instrument is that it must be construed according to the intention of the testator as expressed therein. (§ 21102, subd. (a); *Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1131 [114 Cal.Rptr.2d 865].)

We also independently review and interpret Daniel's responsive pleadings regarding the unpaid debts. (*Cory v. Toscano* (2009) 174 Cal.App.4th 1039, 1044 [94 Cal.Rptr.3d 841].)

■ Although no-contest clauses are favored by the public policies of discouraging litigation and implementing the testator's intentions, they are strictly construed because they result in forfeiture. (*Burch v. George, supra*, 7 Cal.4th 246, 254.) Whether there is a contest within the meaning of a particular no-contest clause depends upon the factual circumstances of the case and the language of the clause. (*Id.* at pp. 254–255.) It is the testator's intentions that control, however, and we may not rewrite a testamentary instrument to immunize legal proceedings that seek to frustrate the testator's expressed intentions. (*Id.* at p. 255.) "The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument." (§ 21102, subd. (a).) Accordingly, we examine the particular circumstances and the language of the no-contest clause to determine whether Daniel's pleading seeks to frustrate his parents' unequivocal expressed intent. (*Estate of Strader* (2003) 107 Cal.App.4th 996, 1003 [132 Cal.Rptr.2d 649].)

The settlors expressly intended by paragraph 6.3 of the Trust to offset "any debts owed" by a beneficiary against that beneficiary's distribution. The settlors did not qualify the debts by stating that the trustee must offset only enforceable debts. (*Estate of Tompkins* (1901) 132 Cal. 173, 177 [64 P. 268] ["The term 'owing' does not necessarily imply an enforceable obligation . . . ."].)

As a matter of law, the notarized Writing constitutes an amendment to the Trust. It was executed in the manner described by the Trust at the time the settlors executed their wills and the Trust. The settlors directed in the Writing that "any and all debts" be offset in order that "all [their] children are treated equal with regard to the distribution of assets." The Writing contains attachments summarizing the loans made to Daniel since 1986, from the settlors' business and personal bank accounts. At the time the settlors executed the Writing, many of the loans were entirely unpaid and were then barred by the statute of limitations. Thus the Trust and the amendment clearly manifest the settlors' intent that unpaid loans to any child be considered an advancement of that child's interest in the Trust. (*Estate of Nielsen* (1959) 169 Cal.App.2d 297, 305 [337 P.2d 87] [no particular words necessary to constitute an advancement rather than a gift or loan providing the decedent's writing expresses the intent to charge the gift or loan against the debtor's interest].)

■ Section 21305, subdivision (b)(9) provides that, "as a matter of public policy," a pleading "regarding the interpretation of the instrument containing the no contest clause" does not violate a no-contest clause. Subdivision (f) of section 21305 defines "pleading" to include a "response, objection, or other document filed with the court that expresses the position of a party to the proceedings."

■ Daniel's pleading attacked his deceased parents' plans to distribute their property. He went beyond seeking an interpretation of the Trust or challenging the exercise of the trustee's power or his accountings. Daniel sought a determination that his debts were barred by the statute of limitations, among other reasons, and therefore could not be deducted from his distribution. Thus according to paragraph 8.4 of the Trust, Daniel's pleading "indirectly contest[ed]" the Trust and the amendment thereto by "seek[ing] to succeed to [a] part of the estate of the settlors other than in the manner specified." (§ 21300, subd. (a) [" 'Contest' means any action identified in a 'no contest clause' as a violation of the clause. The term includes both direct and indirect contests."].)

Although Daniel filed a "safe harbor" petition pursuant to section 21320 concerning another matter in his parents' estate, he did not file a safe harbor petition regarding the offset of his unpaid debts.

■ Moreover, section 21307 does not protect Daniel's pleading. That section provides that a no-contest clause is unenforceable against a beneficiary who, with "probable cause," contests a provision benefitting a person who drafted a dispositive instrument. (*Id.*, subd. (a).) Daniel does not set forth "probable cause" here. In addition, the settlors' attorney drafted the Trust, the instrument that contains the no-contest clause.

## II.

Daniel argues that the trustee may not offset time-barred loans because they are not "debts owed" within paragraph 6.3 of the Trust. He relies upon *Estate of Schaeffer* (1921) 53 Cal.App. 493, 495–496 [200 P. 508], holding that debts of an estate beneficiary that are barred by the statute of limitations may not be offset against the beneficiary's distribution.

*Estate of Schaeffer, supra,* 53 Cal.App. 493, is not helpful to Daniel. *Schaeffer* concerned an attempted offset against a beneficiary's share of an estate for time-barred debts owed to the decedent. The reviewing court held that "interposition of the statute of limitations is as effective as a bar to [a setoff], in a proceeding in probate on distribution, as it would be in an ordinary legal action to recover the amount of the indebtedness alleged to be due." (*Id.* at p. 495.) *Schaeffer* did not involve a settlor's or testator's expressed intent to offset unpaid debts to implement a testamentary plan to treat each beneficiary equally. We construe a testamentary instrument to give effect to the expressed intent of the testator. (*Estate of Kaila, supra,* 94 Cal.App.4th 1122, 1131.) This is the paramount rule in the construction of a testamentary instrument, to which all other rules must yield. (*Ibid.*)

The order is affirmed. Respondent shall recover costs on appeal.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied October 26, 2009, and appellant's petition for review by the Supreme Court was denied December 17, 2009, S177808.

# APPENDIX

B205793   Cook v Cook

October 21, 1997

To Whom It May Concern:

*Reflect the loans (debts) owed to the settlors of*

This document is intended to ~~be an integral part of~~ the Donald and Nancy revocable trust ~~and will~~ *as of the date of execution of said Trust*

It is the desire of Donald and Nancy Cook that all children are treated equal with regard to the distribution of assets upon our demise. We would like for there to be no misunderstanding regarding certain debts owed by children who are beneficiaries. We would like for any and all debts to be offset against any and all assets, which is bequeathed, prior to distribution of the assets to the beneficiaries. The following represents certain debts owed by beneficiaries.

Daniel William Cook

Starting in September of 1985, Daniel approached us for a loan to help him during a difficult time with his business, Cook Construction Company, Inc., Albuquerque, New Mexico. During this time and up until July, 1992, Daniel needed numerous infusions of money to his company in order to pay his employees and keep his business solvent. Whenever it was possible Daniel attempted to repay the loans as noted in the attached schedule. The schedule demonstrates the various wire transfers and personal checks sent to Daniel and repayments by Daniel that were sent to us by check.

"Finance – Exhibit I" attached hereto represents the numerous distributions of dollars borrowed and repaid by Daniel. Beginning in May, 1986 Daniel has attempted to repay the debt, however, payments have been insufficient to repay the debt owed. The total owed through September, 1997 is $492,387.26 for money which was loaned by our company, Cook Construction Company, Inc. Anaheim, California, and $368,147.05 which was loaned from our personal accounts.

It should be noted that detailed records in the form of wire transfer receipts, check copies and bank statements, along with a schedule of loans and repayments support "Finance – Exhibit I". It should also be noted that in the interest of complying with federal and state laws regarding the computation of imputed interest, we have applied the federal applicable rates in accordance with the long term loan rate established by the Internal Revenue Service. We believe this complies with the federal and state law and is a fair rate to Daniel.

Currently Daniel is paying us $1,500.00 per month in repayment of the loan. We have accepted this nominal monthly payment in lieu of full payment until such time that Daniel is financially capable of repaying the principal and interest at an accelerated rate or hopefully in full very soon. Daniel has, on several occasions told us he will repay the total amount due, including interest as soon as his financial situation warrants same. As of recent he anticipates that repayment will follow his successful introduction and implementation of a new proprietary product know as Hydroscope, which he has invested

Appendix
A-1

in and that he expects will generate a generous amount of profit and cash flow within the next two years.

Dennis J. Cook

On two separate occasions we have loaned Dennis money to help him in his time of need.

On October 16, 1991 we loaned Dennis $4,000.00 (Check #6226) to pay for work done to build a swimming pool at his home. This loan remains outstanding. This loan was intended to be of a short duration with no interest rate stated at that time. In order to comply with law we are recognizing a rate of 8% which is slightly in excess of the federal applicable rate but a rate that we feel is fair.

On December 27, 1995 we loaned Dennis $15,000 (Check #103 and #104) to help him during a time when he needed money to support his coffee vending business. This loan was intended to be of a short duration with no specific interest rate stated at that time. We have recognized a rate of 8%, slightly in excess of the federal applicable rate, but a rate that we feel is fair.

The total amount owed through September, 1997, including principal and interest is $23,657.36 (see Exhibit II attached).

_Donald D. Cook, Trustee_     12-23-97
Donald D. Cook, Trustee         Date

_Nancy A. Cook, Trustee_     10-23-97
Nancy A. Cook, Trustee         Date

Appendix
A-2

## Summary - Exhibit I
### Donald and Nancy Cook Loan
#### To Daniel W. Cook - Company Loan

| | Amount Loaned | Amount Repaid | Principal Balance | Interest Amount | Balance Due |
|---|---|---|---|---|---|
| FY-86 | $114,500.00 | $25,000.00 | $89,500.00 | $3,773.45 | $93,273.45 |
| FY-87 | $329,500.00 | $160,000.00 | $259,000.00 | $16,101.60 | $278,875.06 |
| FY-88 | $63,700.00 | $0.00 | $322,700.00 | $25,980.16 | $368,555.22 |
| FY-89 | $55,200.00 | $94,500.00 | $283,400.00 | $27,529.81 | $356,785.02 |
| FY-90 | $9,000.00 | $4,000.00 | $288,400.00 | $32,192.55 | $393,977.57 |
| FY-91 | $0.00 | $0.00 | $288,400.00 | $34,980.01 | $428,957.58 |
| FY-92 | $0.00 | $0.00 | $288,400.00 | $34,278.13 | $463,235.71 |
| FY-93 | $0.00 | $12,000.00 | $276,400.00 | $32,383.99 | $483,619.70 |
| FY-94 | $0.00 | $20,997.34 | $255,402.66 | $32,839.77 | $495,462.13 |
| FY-95 | $0.00 | $68,004.88 | $187,397.78 | $35,716.77 | $463,174.01 |
| FY-96 | $0.00 | $20,500.00 | $166,897.78 | $31,113.16 | $473,787.18 |
| FY-97 | $0.00 | $14,500.00 | $152,397.78 | $33,100.08 | $492,387.26 |
| FY-98 | $0.00 | $0.00 | $152,397.78 | $8,265.73 | $500,655.98 |
| Total 10/21/97 | $571,900.00 | $419,502.22 | $152,397.78 | $346,258.20 | $500,655.98 |

## Summary - Exhibit I
### Donald and Nancy Cook Loan
#### To Daniel W. Cook - Personal Loan

| | Amount Loaned | Amount Repaid | Principal Due | Interest Amount | Balance Due |
|---|---|---|---|---|---|
| FY-86 | $71,000.00 | $0.00 | $71,000.00 | $1,672.56 | $72,672.58 |
| FY-87 | $30,000.00 | $2,000.00 | $99,000.00 | $7,166.33 | $107,838.91 |
| FY-88 | $83,500.00 | $0.00 | $182,500.00 | $11,640.82 | $202,979.73 |
| FY-89 | $3,000.00 | $500.00 | $185,000.00 | $18,482.56 | $223,962.29 |
| FY-90 | $0.00 | $100,000.00 | $85,000.00 | $19,957.53 | $143,919.82 |
| FY-91 | $50,000.00 | $0.00 | $135,000.00 | $13,844.78 | $207,764.61 |
| FY-92 | $75,000.00 | $40,082.00 | $169,918.00 | $17,960.37 | $260,642.98 |
| FY-93 | $0.00 | $0.00 | $169,918.00 | $18,274.98 | $278,917.95 |
| FY-94 | $0.00 | $0.00 | $169,918.00 | $19,397.66 | $298,315.61 |
| FY-95 | $0.00 | $0.00 | $169,918.00 | $23,379.66 | $321,695.28 |
| FY-96 | $0.00 | $0.00 | $169,918.00 | $22,048.20 | $343,743.48 |
| FY-97 | $0.00 | $0.00 | $168,818.00 | $24,403.57 | $368,147.05 |
| FY-98 | $0.00 | $0.00 | $169,918.00 | $6,182.34 | $374,329.39 |
| Total | $312,500.00 | $142,582.00 | $169,918.00 | $204,411.39 | $374,329.39 |

Appendix
A-3