Filed 8/8/13  Douglas v. Douglas CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| E. SCOTT DOUGLAS et al., | B236217 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. YP010736) |
| v. | |
| DEREK B. DOUGLAS, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michael P. Vicencia and Dudley W. Gray II, Judges.  Affirmed in part and reversed in part.

Hitchcock, Bowman & Schachter, Robert Schachter; and Robert D. Feighner for Plaintiffs and Appellants.

Burkley & Brandlin, Walter R. Burkley, Jr.; Broedlow Lewis, Jeffrey Lewis and Kelly Broedlow Dunagan for Defendant and Appellant.

After his father died, appellant Derek B. Douglas became his mother's adviser, and his brothers believed Derek[1] exerted undue influence over their mother. This matter stems from benefits Derek received when their mother, Eva Maria Douglas, acted as the sole trustee of the Douglas Family Trust (Douglas Trust).

Following their father's death, the Douglas Trust was divided into two trusts, designated as the Survivor's Trust (Trust A) and the Exemption Trust (Trust B). The couple's residence became a Trust B asset. Under the terms of the Douglas Trust, if Eva Maria acted as the sole trustee, she had no authority to invade the principal of Trust B. While acting as sole trustee, Eva Maria used the residence, a Trust B asset, as collateral to obtain approximately $875,000 in loans. Derek, to the exclusion of his brothers, directly or indirectly received the benefits from some of these loans.

Eva Maria also amended the Douglas Trust to appoint Derek successor trustee. In a Second Amendment to the Douglas Trust, Eva Maria granted a conditional gift of industrial property, a Survivor's Trust (Trust A) asset, to Derek that previously would have been shared equally among her four sons.

When Eva Maria unexpectedly died, Derek briefly acted as successor trustee. His brothers had him removed and filed petitions in the probate court to recoup Douglas Trust assets from him. The probate court granted in part and denied in part Derek's brothers' petitions. Derek challenges three rulings: (1) Derek must pay $250,000, plus interest at 10 percent, to the Exemption Trust (Trust B) that he received as a death benefit; (2) Derek must pay $200,000, plus interest at 10 percent, to the Exemption Trust (Trust B) that was used to improve the industrial property conditionally gifted to him; and (3) Derek was not entitled to the rental income from the industrial property upon Eva Maria's death. As shall be explained, we conclude the court erred in awarding prejudgment interest on its rulings requiring Derek to pay $250,000 and $200,000 to the Exemption Trust (Trust B). We otherwise affirm.

---

[1] We refer to the family members by their first names for purposes of clarity and not out of disrespect. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 186, fn. 2.)

Derek's brothers also challenge three rulings: (1) Derek had no obligation to pay the Douglas Trust pursuant to a shared equity agreement between Derek and his parents; (2) Derek's acceptance and disclaimer of the conditional gift of industrial property was valid once the court interlineated objectionable language; and (3) Derek was entitled to rental income for the period after he accepted the conditional gift but before the court interlineated the objectionable language in the disclaimer. We conclude the court erred in its rent allocation. We otherwise affirm.

FACTS

1. *The Douglas Family Trust*

In 1992, Eva Maria and Riley executed the declaration of trust for the Douglas Trust. The Douglas Trust provided upon the death of the surviving spouse, all trust assets would be divided equally among their four sons, Randall, E. Scott (Scott), Derek, and Garret.

2. *Survivor's Trust (Trust A) and Exemption Trust (Trust B)*

Riley died in 2002. Upon the death of the first spouse, the Douglas Trust instructed the trustee to divide the trust estate into two separate trusts, designated as Trust A, referred to as the "Survivor's Trust," and Trust B, referred to as the "Exemption Trust."

a. *Survivor's Trust (Trust A)*

The Survivor's Trust (Trust A) consisted of the share of the community property belonging to Eva Maria, the surviving spouse, her separate property, and the balance of the trust property not allocated to the Survivor's Trust (Trust A) or the Exemption Trust (Trust B). The Survivor's Trust (Trust A) was revocable, and Eva Maria had the power as trustee to manage these assets without any obligation or duty to any other person. Upon death, the assets of the Survivor's Trust (Trust A) would be distributed as directed in the Douglas Trust, unless Eva Maria amended the Survivor's Trust (Trust A) to provide for a different distribution of the assets.

3

One of the assets of the Survivor's Trust (Trust A) was industrial property located at 16400 South Garfield Avenue, Paramount, California (Paramount) valued at approximately $1.3 million.

b. *Exemption Trust (Trust B)*

The Exemption Trust (Trust B) became irrevocable upon Riley's death. The primary purpose of Trust B was to remove $1 million from estate taxation. One of the assets of the Exemption Trust (Trust B) was the couple's residence located at 449 29th Street, Manhattan Beach, California (Residence) valued at $940,000 and owned free and clear.

Section 4.062 of the Douglas Trust states: "[I]n the event the surviving spouse is acting as the sole Trustee, then said surviving spouse shall have no discretionary right to invade the principal of Trust B."

3. *Douglas Trust Amendments and Eva Maria's Actions as Sole Trustee*

a. *First and Second Amendments to the Douglas Trust*

In January 2003, Eva Maria executed an amendment to section 7.01 of the Douglas Trust, providing that upon her death, Derek would act as successor trustee, replacing Randall as successor trustee (First Amendment).

In March 2008, Eva Maria executed an amendment to the Survivor's Trust (Trust A) by amending section 4.063 of the Douglas Trust (Second Amendment). The Second Amendment states: "The real property located at 16400 South Garfield Avenue, Paramount, California shall be distributed to the surviving settlor's son, Derek B. Douglas, but only upon execution by Derek B. Douglas of a valid disclaimer of all other assets held in this Trust A and all assets held in Trust B, also known as the Riley E. Douglas Exemption Trust, Dated December 4, 1992." (Capitalization omitted.)

b. *Loans Using Residence (Exemption Trust Asset) as Collateral*

While acting as sole trustee, Eva Maria obtained loans against the Residence, an Exemption Trust (Trust B) asset. When Eva Maria died, the Residence was encumbered with approximately $875,000 in loans. Three loans are at issue in this case.

4

(1).     *Loan to Invest in Rental Property*

After Riley's death, Eva Maria acquired title to 444 36th Street in Manhattan Beach, California (Rental).  She obtained a loan of more than $400,000, against the Residence to invest into the Rental property.  Eva Maria executed  a document in May 2009, stating she "decided that all proceeds from the sale of 444 36th Street, Manhattan Beach, California 90266, should go to my son Derek as soon as this property sells."  The net proceeds from the sale ($1,175,000) were placed into a 1031 exchange account.[2]

(2).     *$250,000 Loan and Paramount Property Improvements*

Eva Maria obtained a $250,000 loan, using the Residence as collateral.  Some of this money was used to improve the Paramount property, which was a conditional gift to Derek under the terms of the Second Amendment.

(3).     *Home Equity Line of Credit (HELOC loan)*

Eva Maria obtained a home equity line of credit (HELOC) in the amount of $250,000.  She used the funds to establish a Fidelity securities trading account for Derek's day trading.  Eva Maria designated Derek as the payable-on-death beneficiary of the Fidelity securities trading account.   After Eva Maria's death, the money was transferred to Derek's account.

4. *Derek's Shared Equity Agreement (SEA) to Purchase the Hermosa Property, and Eva Maria's Gift to Remodel the Hermosa Property*

Riley and Eva Maria entered into a shared equity agreement (SEA) with three of their sons to provide them with the initial funds for a down payment to purchase a home.  As consideration for the down payment, Riley and Eva Maria received a proportionate share of the equity when the property was sold.

---

[2]     Derek testified he was going to use the net proceeds from the Rental property, along with the proceeds from the sale of two other properties he owned, to buy a residential rental property in Beverly Hills.

5

In 1992, Derek entered into an SEA.[3] Derek and his then-girlfriend borrowed $75,437.50 from his parents to use as part of the down payment for the property located at 2540 Manhattan Avenue, Hermosa Beach, California that was purchased for $452,000 (Hermosa). In consideration for the loan, Riley and Eva Maria obtained a 16.7026 percent interest in the Hermosa property.

In 1993, Derek's now ex-girlfriend signed a quitclaim deed. A grant deed was recorded indicating Riley's and Eva Maria's interest in the property as reflected in the SEA.

Derek testified that he executed a promissory note to pay his parent's back the down payment, which replaced his obligation under the SEA. Derek could not remember how much he paid to his parents. Derek testified that he paid off the note in 2001. He had no canceled checks or any documents signed by his parents that indicated he executed a promissory note and paid the note in full.

In January 2001, his parents signed a grant deed conveying their interest in the Hermosa property to Derek. Derek testified that his parents were taken off title when he paid off the promissory note.

Eva Maria gave Derek money to extensively remodel the Hermosa property. It sold in 2009 for $2,100,000.

### 5. *Eva Maria's Untimely Death*

Eva Maria died on August 16, 2009. Upon her death, Derek's brothers believed Eva Maria, while acting as the sole trustee of the Douglas Trust, favored Derek and acted contrary to the terms and intent of the trust instrument. Derek was removed as the successor trustee, and Derek's brothers filed petitions in the probate court to resolve their dispute over trust assets.

---

[3] At the outset of the trial, the court asked whether Derek's SEA was a Douglas Trust asset. Derek's brothers' attorney responded: "Your honor, the will provides everything gets thrown into the trust. And I contemplated filing a probate. I was hoping it would be unnecessary to do so because it ends up in the trust." Thereafter, the parties proceeded to try this issue as part of the case.

PROBATE COURT PROCEEDINGS

1. *The First Amended Petition*

Randall, Scott, and Garret initially filed a petition,[4] seeking a determination regarding the validity of the Second Amendment to the Douglas Trust, seeking an order to return loan proceeds that devalued the Residence, and ordering Derek to pay to the Douglas Trust the equity owed under his SEA following the sale of the Hermosa property. The petition alleged that Derek benefited from the loans obtained using the Residence as collateral, which included the outright gift of $250,000 as a death benefit, the use of $250,000 loan proceeds to improve the Paramount property, and the loan to improve the Rental property.

Granted leave to amend, the first amended petition alleged seven causes of action (Petition). Before trial, Derek's brothers withdrew the third and sixth causes of action. The case proceeded to trial on the following causes of action seeking orders: (1) to compel Derek to repay the $250,000 death benefit (first cause of action); (2) to compel Derek to repay loan proceeds used for the Paramount property improvements (second cause of action); (3) to enforce Derek's SEA (fourth cause of action); (4) to determine the validity of the Second Amendment (fifth cause of action); and (5) to determine whether as successor trustee Derek breached his fiduciary duty (seventh cause of action).

After a two-day court trial, the court granted and denied the Petition (June 29, 2011 order). For purposes of this appeal and cross-appeal, the trial court granted the first

---

[4] Probate Code section 17200 states in part: "(a) Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust . . . . [¶] (b) Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes: [¶] . . . [¶] (12) Compelling redress of a breach of the trust by any available remedy."

Probate Code section 17000, subdivision (b)(3) states: "The superior court having jurisdiction over the trust pursuant to this part has concurrent jurisdiction of the following: [¶] . . . [¶] (3) Other actions and proceedings involving trustees and third persons."

Unless indicated, all further statutory references are to the Probate Code.

and second causes of action, ordering Derek to pay to the Exemption Trust (Trust B) $250,000, plus interest at the rate of 10 percent per annum, and to pay the Exemption Trust (Trust B) $200,000, plus interest at the rate of 10 percent per annum, used for improvements to the Paramount property. The court denied the fourth cause of action seeking to enforce Derek's SEA, and granted nonsuit on the claims that the Second Amendment was procured by undue influence and breach of fiduciary duty.

2. *Petition Filed Following Derek's Disclaimer Under the Second Amendment*

Two weeks after the court's June 29, 2011 order on the Petition, Derek executed a disclaimer. The disclaimer states: "I, Derek B. Douglas, as a prerequisite to receiving a gift from Trust A of the Douglas Trust, dated December 4, 1992, (hereinafter 'TRUST A') as amended by that certain 2nd Amendment to Trust A of the Douglas Trust dated December 4, 1992, which was executed by Eva Maria Douglas on March 22, 2008, hereby irrevocably and without qualification disclaim any and all right, title or interest in all other assets held in Trust A (except with respect to the proceeds from the sale of that certain property at 444 36th Street, Manhattan Beach, CA. [*sic*], that were given to me by Eva Maria Douglas, but still remain in the Trust), and also all assets held in Trust B of the Douglas Trust dated December 4, 1992, also known as the Riley E. Douglas Exemption Trust, dated December 4, 1992."[5]

In response to Derek's disclaimer, Randall and Scott filed a petition seeking court orders to: (1) determine the validity of the disclaimer; (2) set a date for Derek to execute a valid and unconditional disclaimer; and (3) determine the rights to the rental income from the Paramount property (Disclaimer Petition).

In ruling on the Disclaimer Petition, the court determined the disclaimer dated July 14, 2011 (cited above), was not valid because it failed to disclaim any right to the net proceeds of the Rental property (March 7, 2012 order). The court, however, interlineated the offending language at the December 21, 2011 hearing. Thereafter, the court

---

[5]   In July 2011, shortly after signing the disclaimer, Derek filed a petition for recovery of the net proceeds from the sale of the Rental property. Derek's petition was denied.

determined the disclaimer was valid as of July 14, 2011, the date of execution, and Derek was entitled to Paramount rental income from that day forward. The court rejected Derek's position that, upon executing the disclaimer, he was entitled to Paramount rental income from August 16, 2009 (the date of Eva Maria's death) forward.

### 3. *Appeal and Cross-Appeal*

Derek filed a notice of appeal from the June 29, 2011 order, challenging the rulings on the first and second causes of action.[6] He also filed an appeal from the March 7, 2012 order, challenging the court's determination regarding the Paramount rent allocation.

Attorneys for Scott and Randall filed a cross-appeal from the June 29, 2011 order, challenging the ruling on the fourth cause of action seeking to enforce Derek's SEA. They also filed a cross-appeal from the March 7, 2012 order, challenging the court's authority to interlineate Derek's disclaimer.[7] The appeals and cross-appeals have been consolidated.

DISCUSSION

### A. *Derek's Appeal*

Derek advances four claims of error. First, the court erred in ordering him to pay the $250,000 death benefit plus interest to the Exemption Trust (Trust B) because Eva Maria, acting as the trustee of the Douglas Trust, had express authority to borrow assets from the trusts. Second, no substantial evidence supports the court's order requiring him to pay $200,000 plus interest to the Exemption Trust (Trust B) for the Paramount property improvements. Third, if he is required to pay back the Exemption Trust (Trust B), the court erred in awarding prejudgment interest. Fourth, pursuant to the relation back doctrine, the court should have awarded him the Paramount rental income

---

[6] A final order pursuant to section 17200, subject to exceptions not applicable here, is appealable. (§ 1304; Code Civ. Proc., § 904.1, subd. (a)(10).)

[7] Garret's notice of substitution replacing his attorney and proceeding in pro per was filed with the court on July 14, 2011. The brothers' briefs on appeal are filed on behalf of Randall, Scott, and Garret.

9

beginning in August 2009. We discuss each contention in turn, concluding only the third one has merit, that is, the court erred in awarding prejudgment interest.

1. *The Court Did Not Err in Requiring Derek to Pay the $250,000 Death Benefit to the Exemption Trust (Trust B)*

Derek argues the court erred in concluding that he was obligated to pay the $250,000 death benefit he received to the Exemption Trust (Trust B) because the Douglas Trust specifically gave the trustee (Eva Maria) the power to borrow and conduct transactions between trusts. This argument misreads the trust instrument.

In construing the trust instrument, we must ascertain and give effect to the settlor's intent as expressed in the language of the trust. (*Kropp v. Sterling Sav. & Loan Assn.* (1970) 9 Cal.App.3d 1033, 1044-1045; see also § 21102, subd. (a) ["The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument"].) " '[T]he guiding principle must be the intention of the settlor–his intention as expressed. Not, What did he intend to say? but, What did he intend by what he did say? must be the test.' " (*Kropp v. Sterling Sav. & Loan Assn.*, *supra*, at pp. 1044-1045.) Stated another way: "The paramount rule in the interpretation of a testamentary instrument is that it must be construed according to the intention of the testator as expressed therein." (*Cook v. Cook* (2009) 177 Cal.App.4th 1436, 1441.) Interpretation of a trust is a question of law that we independently review. (*Ibid.*)

Section 4.062 of the Douglas Trust limited the trustee's power upon the death of the predeceased spouse if the surviving spouse acted as the sole trustee.[8] Specifically, "in the event the surviving spouse is acting as sole Trustee, then said surviving spouse shall have no discretionary right to invade the principal of Trust B." Thus, under the terms of the Douglas Trust, Eva Maria had no power to obtain loans against the Residence, an

---

[8] Derek's counsel incorrectly refers to Eva Maria as the pre-deceased spouse when construing section 4.06. In section 4.02, the Douglas Trust defines "pre-deceased spouse" as the death of the first of the settlors. Riley and Eva Maria were referred to in the trust instrument as "settlors." Thus, Riley, is the pre-deceased spouse, as he died first, and Eva Maria became the surviving spouse.

asset of the Exemption Trust (Trust B).  Moreover, pursuant to the terms of the Douglas Trust, Eva Maria, acting as sole trustee of the Exemption Trust (Trust B), had no power to distribute $250,000 obtained from the HELOC loan to Derek.  The Exemption Trust (Trust B) became irrevocable upon Riley's death, and could not be altered, amended, or revoked by the surviving spouse.  Under the trust instrument, all four sons were to obtain an equal share.

Derek identifies two sections of the Douglas Trust that he contends gave Eva Maria broad discretion when acting as sole trustee of the Exemption Trust (Trust B) to obtain the HELOC loan and to designate him as the beneficiary of the Fidelity account. Sections 5.05 and 5.18 give the trustee general powers to borrow money and encumber trust property, and to loan or advance money, in the trustee's discretion.  These powers are contained in Article V of the Douglas Trust, which states: "To carry out the purposes of any trust created under this instrument, *and subject to any additions or limitations stated elsewhere in this trust agreement*, the Trustee is vested with the following powers with respect to the trust estate and any part of it, in addition to those powers now or hereafter conferred by law."  (Italics added.)  The limitations stated elsewhere, include, section 4.062, which prevented Eva Maria, acting as sole trustee, from invading the principal of the Exemption Trust (Trust B).  Thus, Eva Maria had no power to use the principal asset of the Exemption Trust (Trust B) to obtain the HELOC loan. Accordingly, Eva Maria breached the terms of the Douglas Trust.

Derek next contends that despite the breach, he should not be required to pay the death benefit to the Exemption Trust (Trust B).  In support of this contention, Derek cites section 16440, contending that if a trustee commits a breach of trust, the trustee is chargeable with making the trust whole.  Thus, he concludes the Survivor's Trust (Trust A) is obligated to repay the Exemption Trust (Trust B).  Derek's conclusion overlooks statutory provisions that permit beneficiaries to bring an action to trace trust property.

Section 16420 permits a beneficiary to commence a proceeding to set aside a trustee's action, and subject to the rights of a third party acting in good faith, to trace trust

11

property that has been wrongfully disposed of and to recover the property or its proceeds. (§ 16420, subd. (a)(9).) In *Estate of Bowles* (2008) 169 Cal.App.4th 684, the court stated a trust beneficiary can pursue a cause of action against a third party who actively participates in or knowingly benefits from a trustee's breach of trust. (*Id.* at pp. 692-694; see also *King v. Johnston* (2009) 178 Cal.App.4th 1488, 1500.)

Derek argues that the rule enunciated in *Estate of Bowles*, *supra*, 169 Cal.App.4th 684, does not apply because the court declined to make any findings that Derek actively participated in Eva Maria's breach of trust. The statement of decision reads: "The court finds that Petitioners are not obligated to prove that the recipient of the proceeds of the Home Equity Line of Credit, Respondent Derek Douglas, participated in the breach of trust or had notice that Mrs. Douglas was committing a breach of trust. Therefore, the court does not make any factual findings on that issue."

Here, however, there was substantial evidence that Derek knowingly benefited from Eva Maria's breach of trust, a finding not addressed in the statement of decision. (See *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) Derek was his mother's adviser following Riley's death, Derek replaced his brother as successor trustee, and Derek was conditionally given property that was a trust asset and would have been divided among all four sons under the Douglas Trust. Eva Maria also made loans from the trust to Derek. At Derek's suggestion, Eva Maria's attorney fully explained the limits of her authority when acting as the sole trustee of the Douglas Trust, from which the reasonable inference can be drawn that Derek had some knowledge of the terms of the Douglas Trust and Eva Maria's authority while acting as sole trustee. While Eva Maria acted as sole trustee, Derek also was involved in managing Douglas Trust assets. Based upon this evidence, a reasonable inference can be drawn that Derek knew Eva Maria's authority to act and benefited from her breach of trust when she obtained the HELOC loan. Thus, substantial evidence supports the court's order requiring Derek to pay the $250,000 death benefit he received to the Exemption Trust (Trust B).

12

2. *The Court Did Not Err in Requiring Derek to Pay $200,000 to the Exemption Trust (Trust B) for the Paramount Property Improvements*

Derek next contends the court erred in concluding he had to pay $200,000 to the Exemption Trust (Trust B) for the Paramount property improvements because there is no substantial evidence to show the actual improvement costs. Eva Maria obtained a $250,000 loan secured by the Residence, an Exemption Trust (Trust B) asset, and Derek admitted that "some money [had] been borrowed against the residence to improve Paramount." Thus, the substantial evidence question presented here turns on whether these loan proceeds can be traced to the Paramount property improvements.

We review the sufficiency of the evidence in favor of the prevailing party. Substantial evidence must be reasonable, credible, and of solid value. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633.) Substantial evidence also may consist of inferences, but "such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation] . . . ." (*Id*. at p. 1633.)

Despite evidence from two witnesses that Derek said $250,000 was used to improve the Paramount property, the court made a finding that there was insufficient evidence to trace all of the $250,000 loan proceeds to the Paramount property improvements. This appeared to be in large part because no financial records existed, and the brothers had to rely on Derek's recollection to trace the loan proceeds.

Derek testified he hired the general contractor for the Paramount property improvements and oversaw the project. Although repeatedly asked, Derek would not estimate the cost of these improvements. Finding Derek's testimony lacked credibility, the court asked a series of questions regarding the specific improvements. Derek testified the improvements were extensive. From Derek's testimony, the court determined at least $250,000 was spent to improve the Paramount property. The court, however, credited additional testimony related to Eva Maria's financial and business affairs, and made a finding that only $200,000 could be traced to the loan proceeds. The court's inferences are a product of logic and reason and rested on the evidence. Moreover, given Derek's involvement with the project and his election to receive the Paramount property, Derek

13

bore the risk of the uncertainty he created. We conclude there is no basis to overturn the court's order requiring Derek to pay $200,000 to the Exemption Trust (Trust B).

### 3. *The Court Erred in Awarding Prejudgment Interest*

In addition to ordering Derek to pay the Exemption Trust (Trust B), the court also awarded prejudgment interest. Derek contends there is no statutory basis to award prejudgment interest, and, even if prejudgment interest were proper, the interest rate was too high. We agree with Derek that the court erred in awarding prejudgment interest.

Section 16440 permits an interest award, but the statute only applies to actions brought against trustees. Section 16440, subdivision (a)(1) reads: "(a) If the trustee commits a breach of trust, the trustee is chargeable with any of the following that is appropriate under the circumstances: [¶] (1) Any loss or depreciation in value of the trust estate resulting from the breach of trust *with interest*." (Italics added.) This statute does not apply.

Section 16420 lists nonexclusive remedies for a breach of trust. Subdivision (a)(9) of section 16420 authorizes an action by a beneficiary against a third party to trace trust property that has been wrongfully disposed of and to recover the property or its proceeds. The brothers' petition sought this equitable remedy, which does not explicitly include interest.

Derek's brothers counter with a citation to section 16420, subdivision (b), which states the remedies in subdivision (a) do not "prevent resort to any other appropriate remedy provided by statute or the common law." They argue that the " 'res' in each instance was money, specifically a loan obtained improperly against the Exemption Trust in this instance." Although this argument is far from clear, the brothers' petition did not seek a money judgment; their only claim for relief was an equitable one under section 16420, subdivision (a)(9) to trace the trust property.[9] Thus, there was no legal basis to award prejudgment interest.

---

[9] In their brief, the brothers do not cite to or rely on Civil Code section 3287, rather than section 16440, as an alternative statutory basis to award prejudgment interest. In

14

4. *The Court Did Not Err in its Allocation of Paramount Property Rental Income*

Derek contends that although he executed the disclaimer on July 14, 2011, based upon the relation back doctrine, he is entitled to the rent from the Paramount property upon Eva Maria's death.  We disagree.

Section 282, subdivision (a) states in pertinent part:  "A disclaimer relates back for all purposes to the date of the death of the creator of the disclaimed interest or *the determinative event*, as the case may be."  (Italics added.)  Because the relation back doctrine states in the disjunctive "or," this is a case where the determinative event triggers the doctrine.  Here, the determinative event, by the terms of the Second Amendment, was acceptance of the conditional gift.  Until Derek satisfied the conditions in the Second Amendment, that is, accepted the gift and disclaimed all other assets in the Douglas Trust, Derek was not entitled to all of the rent from the Paramount property.  Under the terms of the Douglas Trust, he shared equally with his brothers the rent and liabilities of the Paramount property.

Derek appears to argue in the alternative that he would have executed the disclaimer upon Eva Maria's death but for this action.[10]  It is Derek's position that had he accepted the conditional gift and executed a disclaimer, the disclaimer would have been irrevocable even if the court determined the Second Amendment was invalid.[11]  Derek misreads the trust instrument and the Second Amendment.

---

any event, Civil Code section 3287 applies to an award of damages, which were not awarded in this proceeding.

[10]     The court that ruled on the Petition denied Derek's brothers' attempt to force Derek to execute the disclaimer before a judicial determination on the Petition.  The court that ruled on the Disclaimer Petition did not agree that a judicial determination was required before Derek could accept the conditional gift in the Second Amendment.  Derek inexplicably argues the principles of collateral estoppel apply to bar the second court from expressing this opinion.  His argument is legally incorrect and meritless.

[11]     In support of his argument, Derek relies on a number of out-of-state cases that stand for the proposition that a disclaimer is irrevocable.  We do not rely on these out-of-state cases.  Section 281 states:  "A disclaimer, when effective, is irrevocable and binding

The Second Amendment is a conditional gift to Derek, stating the Paramount property shall be distributed to him "but only upon execution . . . of a valid disclaimer of all other assets held in this Trust A and <u>all</u> assets held in Trust B . . . ." (Capitalization omitted.) Here, the terms of the Second Amendment and the intent of the settlor are clear, unless Derek accepted the gift, by disclaiming all the remaining assets in the Douglas Trust, Eva Maria meant to make no gift to him. Conversely, the disclaimer was conditional upon receiving the gift of the Paramount property.

Derek's disclaimer acknowledges it is dependent upon receiving the Paramount property, stating it is "a perquisite to receiving a gift from Trust A of the Douglas Trust." Nothing prevented Derek from accepting the conditional gift in March 2008 when Eva Maria signed the Second Amendment, long before this action commenced.[12] Thus, the court did not err in determining that Derek was entitled to Paramount property rental income upon the execution of a valid disclaimer.

B. *The Cross-Appeal*

In their cross-appeal, Derek's brothers advance three claims of error. First, they contend there was no substantial evidence to support the court's finding that Derek paid off the promissory note and did not owe the Douglas Trust money pursuant to his SEA upon the sale of the Hermosa property. Second, the court had no authority to interlineate Derek's July 14, 2011 disclaimer. Third, the Paramount property rent allocation should not relate back to July 14, 2011 because the court determined the disclaimer was invalid until the December 21, 2011 interlineations. We discuss each contention in turn, concluding the third contention has merit, that is, the court erred in allocating the Paramount property rental income.

---

upon the beneficiary and all persons claiming by, through, or under the beneficiary, including creditors of the beneficiary."

[12] Derek's reliance on section 279 to support his argument is misplaced. Section 279, subdivision (c)(3) is a conclusive presumption regarding the reasonable time within which to file a disclaimer, not the effect of a disclaimer.

16

1. *Substantial Evidence Supports the Court's Conclusion that Derek Did Not Owe Money Under The Shared Equity Agreement*

As a preliminary matter, Derek contends that because his SEA was not a trust asset, his brothers lacked standing to enforce the agreement. Lack of standing is not waived by the failure to timely object and can be raised at any time, even for the first time on appeal. (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604.) Having raised the issue, we conclude Derek's brothers have standing to petition the court because the SEA was believed to be a trust asset. Although Derek's SEA was not listed as a trust asset in the allocation prepared after Eva Maria's death, representations to the court indicated that the settlors intended that all of the Douglas's assets were to be held in trust. While acting as successor trustee, Derek listed Garret's SEA as a trust asset. It follows that Derek's SEA, assuming the obligation still existed, also should have been listed as a trust asset.

Derek's brothers contend there is no evidence in the record to support Derek's position that their parents' rights under his SEA had been extinguished by the payment in full of a promissory note. Specifically, his brothers argue Derek failed to offer any evidence that his parents agreed to the buyout, or Derek actually made the payments. This argument presents the facts in the light most favorable to Derek's brothers, and ignores conflicting evidence the court relied upon to reach its conclusion.

Under the substantial evidence standard of review, the issue is not whether there is evidence in the record to support a different finding, but whether there is some evidence, if believed, that would support the findings of the trier of fact. (*Rupf v. Yan* (2000) 85 Cal.App.4th 411, 429-430, fn. 5.) Credibility is an issue for the trier of fact to resolve. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622.) The testimony of a single witness is sufficient to provide substantial evidence to support a factual finding. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Derek's credibility was under attack because he reluctantly admitted that he had entered into the SEA, and thereafter testified regarding the promissory note, payments on the promissory note, and the pay off of the promissory note without a single reference to

17

a document, canceled check, payment amounts, or dates of payments. The court acknowledged this evidence was insufficient to establish he had paid off his obligation.

But, in addition to Derek's testimony, the deed in which Derek's parents held title to a 16.7026 percent interest in the Hermosa property was admitted into evidence. Derek's parents later deeded their interest back to Derek, and that deed also was admitted into evidence. While there was conflicting evidence that holding title to the Hermosa property was separate from the obligations under the SEA, the court was free to reject that testimony and draw the reasonable inference that Derek's parents' decision to deed their interest in the Hermosa property extinguished Derek's obligation under the SEA.[13] This inference is supported by substantial evidence.

2. *The Court Did Not Err in Interlineating Derek's Election and Disclaimer*

Under the terms of the Second Amendment, the disclaimer Derek executed on July 14, 2011 was not valid, as it was contrary to the settlor's intent expressed therein. (See *Cook v. Cook*, *supra*, 177 Cal.App.4th at p. 1441.) With Derek's approval, the court interlineated a portion of the disclaimer that excluded the net proceeds from the sale of the Rental property. Derek's brothers contend the court had no authority to excise the offending portion of the disclaimer, and instead should have granted their petition. Given the history of this dispute, such a ruling by the court would have been wholly unproductive and a waste of scarce judicial resources since Derek agreed to the interlineations. Indeed, Derek's brothers do not argue that the interlineated version of Derek's disclaimer is invalid.

Citing *Citizens Business Bank v. Carrano* (2010) 189 Cal.App.4th 1200, and *Estate of Canfield* (1967) 256 Cal.App.2d 647, Derek's brothers contend the court lacked

---

[13] Derek's brothers challenge the court's evidentiary rulings sustaining objections to testimony regarding Scott's and Garret's SEAs. Upon our review of the record, the court did not "refuse" to allow this testimony, but rather limited the scope of the testimony. Scott's SEA was admitted into evidence, and Scott was permitted to testify regarding his SEA. Garret's SEA was admitted into evidence, and he also testified regarding his SEA. The court's decision under Evidence Code section 352 to limit testimony on this issue was not an abuse of discretion.

authority to interlineate the disclaimer as the court in essence rewrote the terms of the Trust. In *Citizens Business Bank v. Carrano*, the court stated it was not at liberty to rewrite a trust instrument to attach restrictions to a term the settlors did not expressly include, especially when the term was not ambiguous. (*Citizens Business Bank v. Carrano*, *supra*, at pp. 1207-1208.) In *Estate of Canfield*, the court stated it was not authorized to rewrite a will "under the guise of construing it to determine what the testator *might* have intended if he had survived to a later date and had written it in the light of subsequent developments." [14] (*Estate of Canfield*, *supra*, at p. 654.) These cases are inapposite. In this action, the court made no alterations to the Second Amendment, and instead, by interlineating the objectionable terms in Derek's disclaimer, turned an invalid disclaimer into a valid one under the terms of the Second Amendment.

    3. *The Court Erred in its Paramount Property Rent Allocation*

Derek executed a valid disclaimer on December 21, 2011. Until that date, Derek had no right to all of the Paramount property rental income. Thus, the court erred in awarding Derek Paramount property rental income from July 14, 2011 forward.

---

[14] Derek's brothers also cite cases holding a court cannot rewrite instruments in the context of a no-contest clause. These cases are not analogous as there is no contention that the court's interlineations of Derek's election and disclaimer were contrary to the terms in the Second Amendment.

DISPOSITION

The June 29, 2011 order of the probate court granting the Petition is reversed only insofar as the court erred in awarding prejudgment interest.  In all other respects the order is affirmed.

The March 7, 2012 order of the probate court granting the Petition is reversed insofar as the court awarded the Paramount property rental income to Derek Douglas for the period from July 14, 2011 to December 21, 2011.  In all other respects, the order is affirmed.

Each party to bear his own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

20