Filed 8/5/21  Estate of Flanigan CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Estate of JOHN FLANIGAN, Deceased. | H045838<br>(Santa Clara County<br>Super. Ct. No. PR179602) |
| TERESA FLANIGAN,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>JAMES FLANIGAN et al.,<br><br>    Objectors and Respondents. | **ORDER MODIFYING OPINION AND DENYING REHEARING**<br><br>**[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on July 20, 2021, be modified as follows:

On page 4, last full paragraph, in the second sentence beginning with "Respondents agreed . . . ," add the words "at the hearing below" after the word "agreed" so that the sentence reads as follows:

"Respondents agreed at the hearing below that the court could decide whether they had triggered the no contest clause as a matter of law but asserted that the unclean hands defense raised factual questions."

On page 11, last paragraph, add the following sentence after the first sentence beginning with "The order is reversed . . .":  "Respondents may seek a ruling on their unclean hands defense on remand."

There is no change in the judgment.

The petition for rehearing is denied.

Dated:_____ 　　　　　 _____
　　　　　　　　　　　　　　　　　　　 ELIA, J.


_____ 　　　 _____
GREENWOOD, P.J. 　　　　　　　　　 DANNER, J.

Filed 7/20/21  Estate of Flanigan CA6  (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Estate of JOHN FLANIGAN, Deceased. | H045838<br>(Santa Clara County<br>Super. Ct. No. PR179602) |
| TERESA FLANIGAN,<br><br>Petitioner and Appellant,<br><br>v.<br><br>JAMES FLANIGAN et al.,<br><br>Objectors and Respondents. | |

Teresa Flanigan appeals from an order determining, as a matter of law, that her brothers James, Kevin, Tom, and Allen Flanigan (collectively, respondents) did not violate the no contest clause in their father's trust.  We shall reverse and remand.

## I.    BACKGROUND

### A.    *Factual Summary*

John A. and Frances B. Flanigan, a married couple, had seven children born between 1949 and 1964:  James, Kevin, Thomas, Teresa, Greg, Melvin, and Allen. John and Frances executed the John A. Flanigan and Frances B. Flanigan 1982 Revocable Trust (the 1982 Trust), of which they were both settlors and trustees.  They transferred certain property, including their residence at 426 Mundell Way in Los Altos

(the residence) to the 1982 Trust. The 1982 Trust specified that the residence was and would remain community property.

In December 2000, after being diagnosed with Alzheimer's disease, Frances executed a power of attorney naming John as her attorney-in-fact.

In 2009, John and Frances deeded a 10 percent interest in the residence to Teresa; they continued to hold an undivided 90 percent interest in the residence as trustees of the 1982 Trust.

On November 7, 2013, John revoked the 1982 Trust. Immediately thereafter, he executed the 2013 John A. Flanigan Revocable Trust (the 2013 Trust). The 2013 Trust named Teresa as trustee and provided that "[t]he trustee shall hold, administer, and distribute the property described in the Schedule of Trust Assets (which is attached hereto and made a part of this trust instrument), any other property that may be hereafter subject to this trust, and the income and proceeds attributable to all such property, in accordance with the provisions of this instrument." The residence is listed on the attached schedule of trust assets. The schedule of trust assets also states: "I hereby grant, transfer and convey to the Trustee of the 2013 John A. Flanigan Revocable Trust all of my right, title and interest in and to all jewelry, objects d'art, clothing, household furnishings, and all other personal effects, and all other real and personal property that I own now or acquire later during my lifetime, including my interest in any real property, together with all of my cash, bank accounts, stocks and bonds, general and limited partnership interests, business interests, promissory notes and trust deeds payable to me, or my interest in any such property, together with any insurance on such property."

Article Five of the 2013 Trust provides that, upon John's death, the trustee shall distribute John's interest in the residence to Teresa if Teresa "forgives the payable due her, currently in the principal amount of $426,000, exclusive of any accrued interest"; "the settlor accepts such forgiveness"; and Teresa "survives the settlor." Article Five further provides that the gift of the residence to Teresa "shall lapse" if she "does not

2

survive the settlor, or if [the residence] is not in the trust on the date of the settlor's death." The 2013 Trust provides that, in the event John is not survived by Frances, the remainder of the trust property be divided equally among James, Kevin, Thomas, Teresa, Greg, and Allen.

The 2013 Trust includes a no contest clause. That clause provides, in relevant part, that a beneficiary's right to take under the trust shall be void if the beneficiary "[f]iles a pleading to challenge the transfer of property on the grounds that it was not the transferor's property at the time of the transfer."

Also on November 7, 2013, John executed a pour-over will gifting all of his assets to the 2013 Trust.

Finally, John (for himself and as Frances's attorney-in-fact) and Teresa executed a trust transfer deed (the 2013 Deed) on November 7, 2013. The 2013 Deed provided: "FOR NO CONSIDERATION, WE, JOHN A. FLANIGAN and FRANCES B. FLANIGAN, husband and wife, and I, TERESA FLANIGAN, an unmarried woman, as joint tenants HEREBY GRANT to TERESA FLANIGAN, as Trustee of the 2013 John A. Flanigan Revocable Trust, the real property commonly known as 426 Mundell Way, located in the City of Los Altos, County of Santa Clara, State of California . . . ." The 2013 Deed was never recorded.

Frances died in 2014; John died in 2015.

### B.      Procedural History

Teresa, in her capacity as trustee of the 2013 Trust, filed a Probate Code section 850[1] petition seeking an order declaring the residence to be owned by her as trustee. Among other things, Teresa stated that such an order was required because the

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

Recorder's Office would not accept the 2013 Deed for recording, leaving "record title in the name of the non-existent 1982 Trust, which was properly revoked in 2013."

Respondents, as beneficiaries, opposed the petition, arguing that the residence was not an asset of the 2013 Trust at the time of John's death. Among other things, respondents maintained that the 2013 Deed was defective because it "purports to transfer interests not in fact held by the grantees." Specifically, the 2013 Deed identified grantees John, Frances, and Teresa as *joint tenants*, but the prior deed showed the residence was held 90 percent by John and Frances as trustees of the 1982 Trust and 10 percent by Teresa as an unmarried woman.

Thereafter, Teresa requested that the probate court find that respondents had violated the 2013 Trust's no contest clause. She argued that respondents' opposition to her section 850 petition constituted a pleading to challenge the transfer of property on the grounds that it was not the transferor's property at the time of the transfer, thereby violating the no contest clause.

Respondents opposed Teresa's request, asserting that they "admit and acknowledge John and Frances['s] ownership interest in the [residence]." They characterized their opposition to Teresa' section 850 petition as claiming that no transfer of the residence to the 2013 Trust ever occurred. Respondents also asserted an unclean hands defense, arguing that Teresa's misconduct—including failing to provide requested documents in a timely fashion—shaped their opposition.

Teresa urged the court to determine whether respondents had violated the no contest clause without holding an evidentiary hearing, arguing that it was a question of law. Respondents agreed that the court could decide whether they had triggered the no contest clause as a matter of law but asserted that the unclean hands defense raised factual questions.

The probate court ruled as a matter of law that there had been no violation of the no contest clause. Teresa timely appealed.

4

## II.    DISCUSSION

### A.    *Legal Principles*

#### 1.    *The Enforceability of No Contest Clauses*

A no contest clause in a trust instrument acts as a disinheritance device.  (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422 (*Donkin*).)  " '[I]f a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' [Citation.]"  (*Ibid*.)  No contest clauses "promote the public policies of honoring the intent of the donor and discouraging litigation by persons whose expectations are frustrated by the donative scheme of the instrument."  (*Ibid*.)  At the same time, no contest clauses are in tension with "the policy interests of avoiding forfeitures and promoting full access of the courts to all relevant information concerning the validity and effect of a will, trust, or other instrument.  [Citation.]  In light of these opposing interests, the common law in California recognized the enforceability of no contest clauses, albeit strictly construed, 'so long as the condition was not prohibited by some law or opposed to public policy.'  [Citation.]"  (*Ibid*.)

In 1989, the Legislature partially codified the law governing no contest clauses. (*Donkin*, *supra*, 58 Cal.4th at p. 423.)  The Legislature amended the law a number of times in the ensuing years.  (*Ibid*.)  "The complexity of the [resulting] statutory scheme actually promoted further uncertainty as to the scope of application of a no contest clause" as well as increased litigation.  (*Id.* at p. 424.)  "In 2005, the Legislature asked the [California Law Revision] Commission [(Commission)] to . . . study the advantages and disadvantages of enforcing a no contest clause in a will, trust, or other estate planning instrument."  (*Ibid*.)

"In 2008, the Commission issued a report recommending retention, but with significant revision, of the no contest clause statutes."  (*Donkin*, *supra*, 58 Cal.4th at p. 424.)  Among the reasons the Commission recommended retention was that, "[w]hen

5

the proper disposition of a transferor's property is complicated by difficult property characterization issues, a no contest clause may . . . appropriately operate as a 'forced election' in order to avoid ownership disputes." (*Id.* at p. 425, fn. omitted.) "The Commission gave as an example a situation in which successive marriages resulted in difficult community property characterization issues . . . ." (*Id.* at p. 431.) In that scenario, "[t]he transferor claims that all of the disputed assets are his separate property, gives a gift to his surviving wife that is clearly greater than the amount she would recover if she were to contest the property characterization, and includes a no contest clause. This forces the surviving spouse to make a choice between acquiescing in the decedent's estate plan and taking the amount offered under that plan, or forfeiting that amount in order to pursue her independent rights under community property law." (*Id.* at p. 425, fn. 9.) "As another example, the Commission noted that 'business partners may have mingled assets in a way that would make proper division difficult. . . .' [Citation.] In such cases, the Commission reflected, 'a no contest clause and a sufficiently generous gift can resolve the matter without litigation.' [Citation.] The no contest clause forces the beneficiary to make an election. [Citation.]" (*Id.* at p. 431, fn. omitted.)

"The Commission proposed that the ability of a transferor to use a no contest clause to create a forced election be continued, but recommended narrowing of the existing statutory language, which referred to any 'action or proceeding to determine the character, title, or ownership of property' [citations]." (*Donkin, supra*, 58 Cal.4th at p. 431.) "The Commission proposed statutory language that instead allowed a no contest clause to be enforced against: '[A] pleading to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer,' provided 'the no contest clause expressly provides for that application.' [Citations.] Accepting the

recommendation [citation], the Legislature enacted the language proposed by the Commission, in section 21311, subdivision (a)(2)."[2]  (*Ibid.*)

"Section 21311, subdivision (a), of the current law provides in full as follows: 'A no contest clause shall *only* be enforced against the following types of contests: [¶] (1)  A direct contest that is brought without probable cause.  [¶] (2) A pleading to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer.  A no contest clause shall only be enforced under this paragraph if the no contest clause expressly provides for that application.  [¶] (3) The filing of a creditor's claim or prosecution of an action based on it.  A no contest clause shall only be enforced under this paragraph if the no contest clause expressly provides for that application.'  (Italics added.)  [¶]  The effect of this statute is to make the trust's no contest clauses unenforceable unless the beneficiaries' proposed action is covered by one of the three specified categories of contest."  (*Donkin*, *supra*, 58 Cal.4th at p. 430.)

> 2.      *Determining Whether a No Contest Clause Has Been Triggered*

" 'Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used.'  [Citations.]  '[T]he answer cannot be sought in a vacuum, but must be gleaned from a consideration of the purposes that the [testator] sought to attain by the provisions of [the testamentary instrument].'  [Citation.]  Therefore, even though a no contest clause is strictly construed to avoid forfeiture, it is the testator's intentions that control, and a court 'must not rewrite the [instrument] in such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.'  [Citation.]"  (*Burch v. George* (1994) 7 Cal.4th 246, 254-255 (*Burch*).)

---

[2] While *Donkin* provides a thorough discussion of the Commission report that led to the enactment of section 21311, we also grant respondents' request to take judicial notice of the legislative history of that provision.  (Evid. Code, §§ 452, subd. (c), 459.)

### 3. Standard of Review

"The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein. [Citations.]" (*Burch*, *supra*, 7 Cal.4th at p. 254, fn. omitted.) Below, the parties agreed that the court could decide whether the no contest clause had been triggered as a matter of law and the court did so. Our review is de novo.

### B. Analysis

At issue is whether respondents' opposition to the section 850 petition violated the 2013 Trust's no contest clause. To resolve that issue, we examine the underlying circumstances and the language of the no-contest clause to determine the purposes that John sought to attain by the provisions of the 2013 Trust. (*Burch*, *supra*, 7 Cal.4th at pp. 254-255.) We then ask whether respondents' opposition intended to frustrate John's unequivocally expressed intent. (*Ibid.*; *Cook v. Cook* (2009) 177 Cal.App.4th 1436, 1442.)

We begin by considering whether respondents' opposition falls within the language of the no contest clause. That clause is triggered by any "pleading to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer."

Respondents deny Teresa's claim that they challenged the November 2013 transfer of the residence to the 2013 Trust; they say they merely challenged *the existence* of any such transfer. We are not persuaded. Teresa's petition sought "confirm[ation]" that the transfer had occurred. The opposition acknowledged that the 2013 Deed "purport[ed] to transfer the [residence] to the 2013 [T]rust," but argued that that deed was defective so that no valid transfer occurred. Under respondents' reasoning, any challenge to a transfer could be recast as an argument that no (valid) transfer occurred. Take, for example, the situation posited by the Commission involving the use of a no contest clause to avoid difficult property characterization issues caused by successive marriages. In the

8

Commission's hypothetical, "[t]he transferor claims that all of the disputed assets are his separate property, gives a gift to his surviving wife that is clearly greater than the amount she would recover if she were to contest the property characterization, and includes a no contest clause. This forces the surviving spouse to make a choice between acquiescing in the decedent's estate plan and taking the amount offered under that plan, or forfeiting that amount in order to pursue her independent rights under community property law." (*Donkin*, *supra*, 58 Cal.4th at p. 425, fn. 9.) But, according to respondents, the surviving spouse could circumvent the no contest clause by arguing that, to the extent the decedent purported to transfer assets in which she had community property rights, no valid transfer occurred. If such circumvention were permitted, then section 21311, subdivision (a)(2) would never apply. Accordingly, we conclude that respondents' opposition challenged a transfer of property—namely, the transfer of the residence to the 2013 Trust.

Respondents also assert that, because they acknowledge that the transferors (John, Frances, and Teresa) owned the residence, any challenge was not "on the grounds that it was not the transferor's property at the time of the transfer." It is true that respondents have never disputed that John, Frances, and Teresa possessed ownership interests in the residence. However, respondents did oppose the section 850 petition on grounds that the transfer was invalid because the 2013 Deed "did not properly describe [John, Frances, and Teresa's] ownership interests" in the residence. Specifically, the 2013 Deed identified the transferors as joint tenants; in fact, Teresa held a 10 percent interest and John and Frances held the remaining 90 percent as community property. Thus, respondents challenged the transfer of the residence to the 2013 Trust on grounds that the transferors did not hold the property interests in the residence that they purported to transfer.

The question, then, is whether disputing the *nature* or *extent* of a transferor's property interest (as opposed to their possession of *any* property interest) triggers the no contest clause. The Probate Code answers that question. It defines "property" to include

9

"any interest" in real property. (§ 62.) Accordingly, section 21311, subdivision (a)(2)—and the no contest clause here that mirrors it—applies where a pleading is filed to challenge a transfer of *any interest in real property* on the grounds that it was not the transferor's *interest in real property* at the time of the transfer. For the foregoing reasons, we conclude that respondents' opposition falls within the language of the no contest clause.

In addition to that language, we must consider the surrounding circumstances in our effort to determine John's intent, which ultimately controls. In November 2013, John revised his estate plan by revoking the 1982 Trust and executing the 2013 Trust, a pour-over will, and the 2013 Deed. The 2013 Trust includes a schedule of trust assets, which specifically lists the residence as an asset of the trust. The schedule of trust assets also identifies "all [of John's] other personal effects, and all other real and personal property" currently owned or later acquired by him as trust assets. Article Five of the 2013 Trust provides that Teresa receive John's interest in the residence upon John's death if certain conditions are met, but that the gift of the residence to Teresa "shall lapse" if she "does not survive the settlor, or if [the residence] is not in the trust on the date of the settlor's death." The 2013 Deed purported to transfer the residence to Teresa as trustee of the 2013 Trust. The 2013 Trust's schedule of trust assets and the Deed of Trust unequivocally express an intent to make the residence an asset of the 2013 Trust.

Respondents attempt to conjure up some ambiguity as to John's intent with respect to the residence, noting that Article Five of the 2013 Trust left open the possibility that the residence would not be a trust asset at the time of his death. We are not persuaded. Again, the express inclusion of the residence on the schedule of trust assets and the execution of the Deed of Trust demonstrate that John intended to place the residence in the trust estate. That intent is further confirmed by the portion of the schedule of trust assets identifying all of John's real and person property, whether currently owned or later acquired, as trust assets. Clearly John intended to make all of his property, including

10

specifically the residence, trust assets. The language in Article Five on which respondents rely merely left open the possibility that the residence would later be removed from the trust estate if, for example, it was sold.

Respondents' opposition sought an order that the residence was not a trust asset at the time of John's death, having never been transferred to the 2013 Trust. That pleading squarely intended to frustrate John's unequivocally expressed intent to transfer the residence to the 2013 Trust.

Respondents note that, in this case, "there was no forced election because the [they] did not have or assert any independent right to the [residence] . . . ." As discussed above, the Commission recommended the retention of the no contest clause statutes in part to maintain the ability of a transferor to use a no contest clause to create a forced election. (*Donkin*, *supra*, 58 Cal.4th at pp. 424, 431.) And no contest clauses like the one at issue here are used in that manner to avoid ownership disputes. (*Id*. at p. 425.) However, "[a] forced election is not a requirement before a no contest clause may be enforced . . . ." (*Estate of Pittman* (1998) 63 Cal.App.4th 290, 306-307.) The aims of a no contest clause, including discouraging litigation and effectuating transferor intent, are advanced by its enforcement regardless of whether there is a forced election. (*Id*. at p. 306.)

For the foregoing reasons, we conclude that respondents violated the no contest clause.

## III.    DISPOSITION

The order is reversed, and the matter is remanded to the probate court with directions to enter a new order finding that respondents violated the no contest clause. Teresa shall recover her costs on appeal.

11

_____

ELIA, J.

WE CONCUR:


_____

GREENWOOD, P.J.


_____

DANNER, J.


*Flanigan v. Flanigan et al.*
H045838